UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANDRE GESKE,                                                                      Case No.:

      Plaintiff,

v.

700 EDGEWATER DEVELOPMENT, LLC,

      Defendant.
_____/

## COMPLAINT

Plaintiff Andre Geske complains against Defendant 700 Edgewater Development, LLC, a Delaware limited liability company, and states:

## NATURE OF ACTION

1. In this action, Plaintiff is seeking damages and/or a decree of specific performance for Defendant's anticipatory repudiation of its agreement with Plaintiff for the purchase of a preconstruction custom-built luxury condominium duplex apartment.

## PARTIES

2. Plaintiff Andre Geske is a citizen of the Federal Republic of Germany and is not a permanent resident of the State of Florida, the State of Delaware, or another jurisdiction of the United States or its political subdivisions.

3. Defendant 700 Edgewater Development, LLC is Delaware-chartered limited liability company with its principal place of business in Miami, Florida.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C §1332(a)(2) because this is an action between "citizens of a State and citizens or subjects of a

foreign state," and Plaintiff is not lawfully admitted for permanent residence in the United States while domiciled in the State of Florida or in the State of Delaware.

5. Pursuant to the Purchase Agreement that is the subject of this action, the parties contractually agreed to submit to the exclusive jurisdiction of the federal and state courts in Miami-Dade County, Florida for all actions arising in connection with their contract.

6. Venue is proper in this district under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here and/or a substantial part of property that is the subject of the action is situated here.

## **COMMON ALLEGATIONS**

7. Defendant has been developing and selling to the public preconstruction a 57-story luxury condominium high rise. The building is under construction and is located at 700 N. E. 26th Terrace, Miami, Florida 33137. The project legally known as the 700 Edgewater Condominium ("700 Edgewater" or "Condominium"), and is marketed and developed by Defendant as "Mission Baia."

8. In early 2020, when the Coronavirus pandemic was just beginning, Plaintiff was interested in purchasing a custom-designed luxury waterfront residence in a condominium high rise in Miami. Plaintiff's real estate salesperson introduced him to the 700 Edgewater project. Defendant provided Plaintiff with its sales and marketing materials and drawings and other project representations and made certain oral representations about available project amenities.

9. Thereafter, after involved discussions, Plaintiff decided to pursue purchasing a top floor penthouse unit in 700 Edgewater, provided Defendant agreed to certain critical conditions for customization of the apartment to meet his particular needs. Among other things, Plaintiff sought a two-level, or duplex unit, on the top floor, which would require the combination of two

units, one above the other. Additionally, Plaintiff specified the amenities he needed to be installed in the unit. These amenities predominantly were required to be custom-fabricated and, in some cases, sourced outside of the United States.

10. Plaintiff and Defendant engaged in intensive negotiations about proposed terms which would involve Defendant selling Plaintiff units 5603 and 5703 as a single combined two level duplex condominium apartment ("Unit") which would be connected by a customized staircase ("Unit") along with a host of amenities Plaintiff required. The terms which the parties discussed varied substantially from Defendant's standard contract terms offered to other purchasers at 700 Edgewater.

11. Plaintiff refused to enter any agreement with Defendant which did not vary from its developer standard purchase contract terms and he refused to rely upon oral representations by Defendant. In order to induce Plaintiff to purchase the Unit, Defendant made an exception and agreed to vary from its developer standard purchase contract. To that end, the parties, through legal counsel, negotiated an addendum to modify Defendant's standard form contract and contain the additional terms the parties had negotiated. They titled the addendum, "Amendment to Agreement." Paragraph 26 of the Amendment to Agreement states in effect that it is the sine qua non for Plaintiff's agreement to purchase the Unit.

12. On February 20, 2020, Plaintiff and Defendant entered an agreement for plaintiff to purchase the Unit. The agreement consists of: Defendant's developer standard purchase agreement, Defendant's form addendum providing Plaintiff with additional parking spaces and the Amendment to Agreement (collectively, the "Purchase Agreement). A copy of the Purchase Agreement is attached hereto as Exhibit "A" and incorporated herein.

13. Under the Purchase Agreement, Plaintiff agreed to purchase the Unit for the total

price of $9.6 million. The Purchase Agreement required Plaintiff to pay Defendant the sum of $1,920,000 within ten (10) business days of its execution, and an additional $960,000 not later than ten (10) business days following notice from Defendant that the 57th floor concrete slab had been poured. The remainder of the $9.6 million purchase price is to be paid at closing. To date, Plaintiff has timely met all of the pre-closing financial and other requirements under the Purchase Agreement.

14. The Purchase Agreement, moreover, expressly sets out the particularized requirements which Defendant agreed to follow to furnish and equip the Unit and ready it for closing. These requirements include customary items such as flooring and drywall installation. They also include substantial variation from what Defendant customarily provides its buyers. These specialized amenities include, among other things, dropped ceilings, a customized lighting system, upgraded appliances, upgraded front and interior doors, a Crestron-brand home automation and information system, upgraded bathroom and kitchen fixtures and plumbing and vanities, specialized reinforced drywall and changes to the drywall design – the requirements of which were to be furnished thereafter by Plaintiff – as well as other spatial modifications to the Unit's design, options for fireplaces and an outdoor balcony kitchen, a specially designed staircase and an optional private pool. Finally, the Purchase Agreement requires Defendant to paint the Unit's walls and ceilings with the specialized upgraded white paint: RAL 9010, and to give Plaintiff at closing a credit of $150,000.

15. After execution of the Purchase Agreement, Plaintiff worked diligently to comply with all of his contractual obligations and to provide Defendant with all required information for the ordering of product and the customization of the Unit. In fact, at his own expense, Plaintiff hired a personal project management team headed by Jorge Pinto of Intelligent Construction,

Inc. to work with Defendant to ensure the Unit is ready in a timely manner and that all materials and amenities are ordered and/or delivered and are conforming.

16. From the start, however, Defendant, dragged its feet, only reluctantly cooperating with Plaintiff. Defendant, for example, was very slow in providing necessary information for the ordering of items and the customization of the Unit. Nevertheless, Plaintiff persisted and at his initiative his representatives and Defendant's representatives met regularly to set timetables and goals for readying the Unit for closing. The most recent meeting was on April 8, 2022 when Mr. Pinto and his assistant Karina conferred with Defendant's representatives. At that time, Defendant advised that it planned to obtain a temporary certificate of occupancy ("TCO") for the condominium building in July 2022 and to work out the remaining finishing issues for the Unit within the following four weeks.

17. Then, suddenly, on April 25, 2022, Defendant changed direction entirely. In repudiation and breach of the Purchase Agreement, Defendant's agent, Vanessa Grout, sent the following email, a copy of which is attached hereto as Exhibit "B," to Plaintiff's agent, Gerd Damrath, advising as follows:

> Since we are about to obtain TCO for Missoni Baia and cannot make any more changes to our permitting process/construction schedule, we have finalized our analysis of credits owed to you per the amendment to your purchase agreement. Unfortunately, we are not able to accommodate all of the original requests, as well as the long lead items such as the lighting package. So as not to delay the building's delivery, developer will deliver the combined unit 5603/5703 as an unfinished shell with front doors and the concrete staircase installed, honed Bianco Neve material installed on the terrace and all credits applied to the purchase price as listed below:
>
> Credits to Buyer
>
> Drop ceilings (cost) - $20,000
>
> Base lighting (cost + 15%) - $2,723

5

> Standard doors (cost + 15%) - $15,794
>
> Crestron -$75,000
>
> Kitchen/ bath credit – (cost + 15%) Unit 5703 and Unit 5603 $53,195 and $47,325.
>
> 28 art backing locations (cost) - $7,000
>
> Paint (cost) - $9,500
>
> Interior Flooring (cost) - $103,632.
>
> Total credits $334,171.
>
> Please let me know if you would like to schedule a call to further discuss.

18. Contrary to Ms. Grout's email, the Condominium is far from complete. Defendant's contention that it is about to obtain a TCO – a temporary certificate of occupancy – is not credible and contradicts the representations Defendant made to Plaintiff's representatives on April 8, 2022. It appears that Defendant deliberately has been misleading Plaintiff about its intentions in performing under the Purchase Agreement to lull him into a false sense of security while waiting until the eleventh hour to unilaterally decide that it would no longer honor its contractual obligations to finish the unit and instead attempt to improperly shift its contractual obligations onto him.

19. Furthermore, the Unit currently is but an empty shell. It is months away from being in a condition which would allow the issuance of a temporary certificate of occupancy. In fact, the condition in which Defendant plans to deliver the Unit does not even meet the relatively minimal standards set in Defendant's standard form contract used in the sale of other units in the Condominium. In short, Defendant's announced intention to deliver the Unit to Plaintiff in an unfinished state is a willful and anticipatory repudiation and breach of the Purchase Agreement.

20. Defendant's offer to credit Plaintiff in the amount of $334,171 for the unfinished

work in fact is an admission of its willful breach/intention to breach the Purchase Agreement. The Purchase Agreement does not grant Defendant the legal right to credit Plaintiff for work it chooses not to do in lieu of compliance. Moreover, the offered credit is de minimus and a fraction of the cost were Plaintiff to have to pay for the acquisition and installation of the items and to complete the Unit. In effect, Defendant is seeking to avoid its contractual obligations and foist upon Plaintiff the costs which it undertook in entering the Purchase Agreement. Additionally, Plaintiff is not a professional builder and is ill-equipped to take over the completion of the Unit from Defendant. Thus, Defendant's deliberate breach will prevent Plaintiff from receiving the Unit in condition which Defendant has promised to deliver it, thereby further denying him the bargain he contracted to receive under the Purchase Agreement.

21. Defendant's motivation for breaching the Purchase Agreement appears to be the increased costs of contractual performance caused by the current inflationary pressures and nationwide supply shortages. But these were risks which Defendant assumed when it entered the Purchase Agreement in the midst of the pandemic. The Purchase Agreement is a bargained for contract with consideration exchanged. Defendant cannot unilaterally modify the Purchase Agreement's terms. In fact, the Purchase Agreement expressly provides that its terms cannot be modified except in a writing signed by all parties.

22. All conditions precedent to the filing of this action have been waived, satisfied or excused.

23. Before filing this action, on May 2, 2022, undersigned counsel sent a letter to Defendant by next day delivery demanding compliance with the Purchase Agreement but Defendant has failed to respond. A copy of this letter is attached hereto as Exhibit "C."

24. The Purchase Agreement provides for the recovery of attorneys' fees and costs in

the event that an action is filed to enforce it.

25. Plaintiff has retained the services of undersigned counsel and is required to pay counsel's reasonable fees and costs.

### COUNT I – ANTICIPATORY BREACH/REPUDIATION OF CONTRACT

26. Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 25 above as paragraph 26.

27. On February 20, 2020, Plaintiff and Defendant entered the Purchase Agreement. The Purchase Agreement is a fully integrated agreement, setting forth the parties' obligations. Among other things, Defendant is required to deliver the Unit to Plaintiff with the amenities and in the condition set forth in the Purchase Agreement in return for the consideration already paid by Plaintiff and the future consideration he is to pay at the closing.

28. Pursuant to the April 25, 2022 email of its agent, Vanessa Grout, to Plaintiff's agent, Gerd Damrath, however, Defendant clearly and unambiguously announced its intention to repudiate the express terms of the Purchase Agreement by refusing to complete the Unit as contractually required, stating it will give Plaintiff a de minimis credit for its unperformed work and materials.

29. Defendant has ignored Plaintiff's demand that it comply with its contractual obligations under the Purchase Agreement.

30. Plaintiff is in compliance with the Purchase Agreement and has fulfilled all requirements incumbent upon him as of the date of Defendant's repudiation.

31. Defendant's announced repudiation of the Purchase Agreement deprives Plaintiff of the benefit of the bargain under the parties' contract. Furthermore, it shifts to Plaintiff Defendant's contractual duties and the attendant costs. This has the effect increasing the effective

purchase price for the Unit, as Defendant is seeking to make Plaintiff incur its costs to complete the Unit which are Defendant's sole contractual responsibility. Defendant's breach thus amounts to a total and material repudiation/breach of the Purchase Agreement.

32. As a direct and proximate cause of Defendants' repudiation of the Purchase Agreement, Plaintiff has been damaged. But for Defendant's repudiation of the Purchase Agreement, Plaintiff would not have sustained his losses.

WHEREFORE, Plaintiff Andre Geske demands judgment against Defendant 700 Edgewater Development, LLC for compensatory damages in accordance with the proof at trial, interest, costs, reasonable attorneys' fees and such other further relief as this Court deems just and proper.

### COUNT II – BREACH OF THE DUTY OF GOOD-FAITH AND FAIR-DEALING

33. Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 25 as paragraph 33.

34. Plaintiff and Defendant entered the Purchase Agreement. It is a valid, binding, and enforceable contract.

35. Inherent in the Purchase Agreement, as in every contract, is an implied duty of good-faith and fair dealing.

36. Defendant breached its implied duty of good-faith and fair dealing under the Purchase Agreement by, among other things repudiating the contract and unilaterally changing its terms. Specifically, Defendant by its April 25, 2022 email, advised Plaintiff of its intention to not complete the Unit as required by the Purchase Agreement and instead provide him with a de minimis credit for the unfinished work and materials.

37. Defendant's repudiation of the Purchase Agreement has deprived Plaintiff of the benefit of that agreement.

38. Plaintiff has been damaged because of Defendant's breach of its duty of good-

faith and fair dealing.

WHEREFORE, Plaintiff Andre Geske demands judgment against Defendant 700 Edgewater Development, LLC for compensatory damages in accordance with the proof at trial, interest, costs, reasonable attorneys' fees and such other further relief as this Court deems just and proper.

### COUNT III – SPECIFIC PERFORMANCE

39. Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 25 as paragraph 39.

40. This claim is brought in the alternative to Counts I and II.

41. Defendant, by its agent's April 25, 2022 email, announced its intention to willfully breach the Purchase Agreement.

42. The Purchase Agreement is a valid, binding, and enforceable contract whose terms are clear, definite, certain and complete in all essential aspects. The Purchase Agreement sets forth with extreme clarity the parties' duties under the contract. The Purchase Contract also identifies the contracting parties, describes the property at issue and the contract price. The duties established by the Purchase Agreement include Defendant's obligation to complete, furnish and ready the Unit for delivery to Plaintiff at closing in accordance with the contract.

43. The Purchase Agreement is not perpetual and has a defined term.

44. The equitable remedy of specific performance expressly is reserved in the Purchase Agreement in the event of a willful breach by Defendant.

45. Plaintiff lacks an adequate remedy at law.

46. Plaintiff clearly is entitled to a decree of specific performance. He has no adequate remedy at law, and the relief he seeks is dictated by the requirements of justice.

47. Plaintiff has paid all of the contract sums required to date to be paid under the

Purchase Agreement and he stands ready, willing and able to pay all remaining sums due thereunder.

WHEREFORE, Plaintiff Andre Geske demands judgment against Defendant 700 Edgewater Development, LLC for a decree of specific performance directing Defendant to fulfill its contractual obligations and deliver the Unit to Plaintiff in the condition required by the Purchase Agreement, and awarding Plaintiff costs and reasonable attorneys' fees and such other further relief as this Court deems just and proper.

Dated this 18th day of May, 2022.

        STEVEN F. SAMILOW, P. A.
        1792 Bell Tower Lane
        Weston, FL 33326
        Tel: (954) 315-3612 / Fax: (954) 252-4502

By:    *s/Steven F. Samilow*
        Steven F. Samilow
        Florida Bar No.: 769142
        Email: stevens@samilowlaw.com

*Counsel for Plaintiff Andre Geske*